Thank you, Your Honor, and good morning to all of Your Honors. May it please the court, my name is Mike Filigiani. I represent the petitioner in this case, Anthony Jordan. As you know, this case involves a disability compensation claim under the Longshore Harbor Workers' Compensation Act. What I'd like to begin with today is the legal question in this matter, and I'd specifically like to go to the ALJ's order below at ER 18 and 19. And I'd like to read to you two statements here that I think get us into the meat of the legal issue and how the ALJ misapplied the relevant law to the disability claim here. First, at the top of ER 18, it says, Mr. Jordan must establish his total disability by showing that he cannot return to his regular or usual employment due to his work-related issues. So let me just ask you, Mr. Villagianti, what is the actual standard you think that the ALJ should have applied? Fair enough, Your Honor, and I think I'll start my response by just stating that I don't think in the briefs there's really a dispute over what the standard entails. And it has a lot to do with what's necessary or sufficient to prove disability. So what is the standard? Is it the standard that we see laid out in some of the benefit review board cases that you cited in your brief? What is the standard you're asking for? Well, I think under the relevant standard, a claimant can prove his disability in several ways. One is through a showing that a return to work will cause him physical pain. Another is that by showing that a return to work will aggravate his injury, worsen his symptoms, expose him to additional hazards. The point is, it's not strictly that he has to be physically unable in a possibility versus impossibility sense to actually return to work. And I understand, but can you just – I'm trying to get from you what you think the ALJ's standard should be. So I understand that your position is that he shouldn't be asked to do something that is, although technically possible, very, very, very taxing or painful or dangerous. But so where is the line there? What is the actual standard that you think the ALJ should apply? I think one place we can look is the Act itself. I think that's what you're asking me. And the Act itself, this is 33 U.S.C. 902 Part 10, says that disability means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment. And the way this has been applied in a number of the cases we cited in the opening brief particularly is that this isn't a strictly medical concept. It's not solely about whether Mr. Jordan or any other claimant can work through his pain. And I think there's an illustrative example in this case. In our opening brief, we pointed out some testimony by Dr. Reynolds, who was Mr. Jordan's treating physician. Dr. Reynolds said – Let me just go back, though. I just need to – we may be talking past each other, but I'm looking at your brief, right? And you cite one standard, for example, from the Fifth Circuit, which looks like it gets some play in the Benefit Review Board case. Even if able to work, a claimant may be found to be totally disabled if he is working with extraordinary effort and excruciating pain. Is that the standard that you think the ALJ should apply here? That's the standard that you quote in your brief. Yes, and I think the answer there is also found in GROSS, which is finding authority in this circuit. In the GROSS case, the disability finding was strictly based on the claimant's pain and suffering. And in fact, that claimant could actually do some work. The disability was slightly different than the present case in that it was based on a reduced number of days that he could work, reduced number of hours overall. But the disability was strictly due to the pain and suffering. And in fact, he was working, just at a reduced amount. And that's very similar to Mr. Jordan in this case. Let me intercede. I'm not so sure you're clearly answering Judge Bress's question. I'm concerned about the issue of pain here. It seems to me that the law says that you can go back to work with pain or without pain. I think that's what Judge Bress is trying to get his hands on. And so am I. What is the standard? Because I don't think there is a credibility determination made here as to whether or not the claimant can go back to work with or without pain. I'm troubled by that. Is that really the standard that we should be focusing on here? Well, you know, I apologize because the specific case escapes me at the moment. But there is a case cited in our brief, and it talks about how a claimant who is in pain could be found disabled and might not be found disabled. That particular issue. Well, how much pain is enough? That's the question, right? If he has to go down to the doc and take some Advil beforehand, is that too much? Or are we talking about someone who has a much greater level of pain than that? Frankly, I think we're talking about somebody with a greater level of pain than that in general. But this is one of those factual determinations that, in our view, is holistic and is in the discretion of the ALJ. The claimant at the ALJ never made a determination on the issue of pain. And that's what the failing is here in terms of his decision at the review. Or am I putting words in your mouth? I think that's right. He not only never made a determination as to whether the pain itself was disabling, but there's also other testimony here that's relevant that wouldn't have been considered under a possibility-impossibility standard. And I would point out that testimony is particularly from Dr. Reynolds, where he said that bouncing around in a truck, which is the main responsibility here, would be about the worst thing Mr. Jordan could do for his back. He also recommended against Mr. Jordan returning to work because it was dangerous for him to be around heavy equipment. He was immobile and he was prone to falling. And, in fact, the falls were captured in the surveillance video as well. And so it's not just the pain issue itself. It's the pain. It's that he's putting himself in greater danger. He's allowing himself to aggravate his injury if he returns to work. And, you know, I think just as important, Mr. Jordan also testified that he couldn't actually complete any shift that was long enough to constitute a job. And so all of those things underscore the standard, which is that Mr. Jordan cannot perform his regular employment in any kind of a safe or reasonable way. And to follow up on that, I'd point out that under – I cited SIPON-CBIDOR, but there are several cases under the act. This is a remedial act, and it's intended to protect workers from injuries on the job that affect their livelihoods. It's not intended to force workers to return to work in pain in a place where they present a danger to themselves and others. It's a remedial act. So they're telling me that the act – I'm trying to see what I can put through this. Maybe I'm getting foggy in my old age here. I might be able to follow all of your sophisticated comments. They're telling me that the act does or does not require a claimant to engage in activities that cause pain or otherwise exacerbate symptoms. I want to get a standard in my head. I think Judge Bress was trying to reach out in that direction as well. Tell me what the act requires. Can you answer that simple question? I see. I think the answer there is actually best described in the Lewis case, which is admittedly out of the circuit. But the Lewis case – Answer my question first, and then you can try to use your case. Does the act require a claimant to engage in activities that cause pain? Yes or no? And, Judge Block, I don't mean to be overly smart about this. I would say generally the answer is no. But the question is it depends. And the question, the standard described in Lewis is the claimant does not have to undertake extraordinary efforts to go back to work in pain. And that particular standard is in the discretion of the ALJ, admittedly. In the ALJ proceedings, was your client allowed to put on the evidence that he believed he needed to put on to meet the standard that you say applies? In other words, if you're right here on this legal standard issue, what do you want? Do you want this to go back to the ALJ just for a reevaluation under the proper legal standard? Or do you believe you were precluded from putting on any evidence by what you claim was the ALJ's improper legal standard? Do you understand what I'm asking? I do. I don't think we were precluded from putting on any evidence. I think the ALJ's evaluation was based on an overly narrow and heightened standard. So I would like for it to go back to the ALJ for a reevaluation under the proper standard. I think you would agree if the ALJ could go back on remand and say, I just did not find Mr. Jordan credible here. I don't think he actually said that, but he could say that if he believed that to be the case. That's true, Your Honor. And I agree with you on both points. If the ALJ had come out and said, I don't find Mr. Jordan credible, I don't think he was in pain. I think he could have returned to work just fine. I don't believe him. That's different than what happened. What happened here, and I think this is highlighted again on ER 18, he says Mr. Jordan's view is consistent with the view that cannot does not literally mean cannot. And he says, he acknowledges that he can do anything, but he can only do it with pain and only for shorter periods than before the injury. And he characterizes that testimony not as incredible or not credible. He characterizes it as unhelpful and says a little bit further down at the end of his discussion about Mr. Jordan's testimony that Mr. Jordan is focusing on the wrong question. And this is the whole problem with this particular evaluation of his case. Would it be sufficient for Mr. Jordan to show that he couldn't work, literally and as a physical question? That would be sufficient, but it's not necessary. If he's going back to work in pain and he's presenting a risk to himself, to others, or he can't complete a shift, that also can establish disability. And I think it's very clear from this order, particularly the manner in which the judge, the ALJ below, discusses the terms can and cannot, that he's talking about strictly possible versus impossible as a strict physical matter. What do you make of the benefits review board opinion that does seem to at least characterize the ALJ's finding as a credibility finding? I don't think that's supported in the ALJ's order at all. And in fact, you know, he really just puts aside Mr. Jordan's testimony about the pain and the length of time he can work. I don't think there's a credibility determination in any way. He just says he's focused on the wrong question and that his testimony is consistent with the view that cannot does not literally mean cannot. The board has to really not make a separate, it's not their fault to make a separate credibility determination. They have to review the record from the administrative judge, right? So that's the failing on this, to make a credibility determination as to whether there was pain or not. I think that's fair, Your Honor. I'd like to reserve a little bit of time for rebuttal, if I may. But I would be remiss if I didn't at least briefly point out the crediting of the defense doctor's testimony over Dr. Reynolds. And, you know, granted, the ALJ has a lot more discretion on that sort of factual issue. Our position, though, is simply that Dr. Reynolds had actual knowledge of Mr. Jordan's capabilities beyond what was shown in the surveillance. And, in fact, actually reviewed Dr. Sue's report about the surveillance. And so there's no good reason to credit the defense doctors over Dr. Reynolds, simply based on this actual viewing of the surveillance alone. And with that, I'd like to reserve some time. OK, thanks. Thank you, Your Honor. Thank you. Mr. Chang. Good morning, Your Honors. May it please the court. My name is Alan Chang. I represent the respondents in this case, SSA Terminals and Home Court Insurance. Simply put, this is a case where a petitioner failed to meet his burden of proof at a long, short trial. Before you get to that, I think you have to address this issue with the legal standard, because I have concerns that the ALJ did not apply the proper standard here. So what's your response to that? The standard in this case, where the relief sought was temporary total disability benefits, was that the claimant was tasked to demonstrate a prima facie case of total disability. A case that petitioner cites and relies upon rather heavily was Hawaii-Steve Adores v. Ogawa. The Ogawa case confirms that disability, in terms of a long, short act, is an inability to return to work. Right. But, I mean, I assume you agree that just because this gentleman could technically do the physical requirements of his job, if he was doing so in excruciating pain or in extraordinary effort, he would be totally disabled under the act. Not necessarily, Your Honor. The fact finder in this case, ALJ... Really? How can you say that? I don't know. I'm not aware of any legal support for that position. It depends on the totality of the evidence in any given case. If there were excruciating pain, and it's demonstrated by the evidentiary record, and this renders the long, short claimant incapable, totally, of returning to work, then Your Honor would be correct. Respondents can see that that would be a case... I don't think somebody has to be on a stretcher, on a deathbed, to be entitled to these benefits. I mean, the problem with this ALJ opinion is it's very ponderous. It's citing a movie. It's almost like a philosophical discussion of a person's abilities or not, but that's not the legal standard here. The legal standard would be that prima facie case of total disability that Judge Larson did apply. Perhaps the language selected could have been less philosophical, as Your Honor correctly pointed out, to be honest. But the fact finder's role as a whole is to evaluate all the evidence that's presented on record and determining whether or not a prima facie case of total disability in this case was demonstrated. That word total is particularly important in this case, Your Honor. But where did the ALJ make the finding that Mr. Jordan was not credible? I don't see it. And so maybe you can direct us to some portion of the opinion where he did, because I think your friend on the other side has acknowledged that if he had made that finding, this would be a different case. It's just their position is he didn't. If I could direct the court to pages 9 through 13 of the record, ALJ Larson did consider, evaluate, and assign weight to both Mr. Jordan's testimony as well as Dr. Reynolds' testimony. He did in fact address petitioner's complaints of pain as well as his credibility. He did find that although Mr. Jordan's complaints of pain were not wildly improbable, they nevertheless did not amount to enough evidence to demonstrate a total disability. There were other portions of the record that did demonstrate his capacity to work, which was the key inquiry in deciding whether or not this gentleman was totally disabled. Particularly, ALJ Larson had a total of four doctors' opinions. There was Dr. Reynolds, whose petitioner assigned as his treatment. What's the standard? I mean, we were talking with your opposing counsel about this exact question. Going back to the question that Judge Block and I have been asking, what do you think the standard is that the ALJ is supposed to apply? Let's assume we believe that a longshoreman who's in some degree of pain or is forced to some degree of extraordinary effort, given his disability, would be covered under the act. What is that standard? The standard is the inability to return to one's work. And if the court would be patient with me, there are different degrees of disability within the Longshore Act. That is what the nature and extent inquiry really is concerned with. Disability under the Longshore Act can take various different forms. It can be temporary or permanent. It could be partial or total. The specific relief sought in this case was temporary total disability. Therefore, in this particular case, the burden of proof was for Mr. Jordan to demonstrate a prima facie case of total disability for a finite time period. You're telling me that pain is an irrelevancy under your standard? Absolutely not, Your Honor. Pain is absolutely a consideration in considering the entirety of the evidentiary record. And this was considered by ALJ Larson as he confirmed on pages 9 through 13 of the record. Can I ask you about, you pointed this to the record, at ER 10, the petitioner says, in response to, you know, what can you do, he says, there's nothing I can't do, but it all either is painful, elevates the pain, or I can't do it for the amount of time that would be considered a job. That seems to be a pretty definitive statement that he is not able to maintain the job. That is, yeah, he could do it for a little while, but, you know, to do an eight-hour shift or whatever is required, the pain apparently increases and becomes debilitating. So is there something in the record that suggests, and I think we've all kind of had the same questions, is there something in the record that says that statement by the petitioner was discounted or discredited because the ALJ didn't believe it? That, quote, I can't do it for the amount of time that would be considered a job. It was not necessarily completely discredited, Your Honor. However, ALJ Larson did assign more weight, apparently, to other evidence that was on the record, including three out of four doctors' opinions that Mr. Jordan was not disabled at all during the period in which he sought benefits from April 2016 through March of 2018. That testimony that Your Honor cited was just one piece of evidence in this entire evidentiary record, which this court is aware of since the excerpts of records submitted by petitioner are over 700 pages. Judge Larson, as fact finder, was tasked to not only consider, which he did, claimant's testimony, as well as his treating doctor's testimony, but also the entire defense record that was presented before him. He was tasked to weigh this evidence in determining the prima facie case of total disability standard. Can I ask you, do you agree that the, this is from the opening brief, but this is back to the question of the legal standard, that somebody is totally disabled despite continued employment if he works through extraordinary effort and in spite of excruciating pain? In other words, if Mr. Jordan was technically capable of working, but doing so required, quote, extraordinary effort or excruciating pain, he would be totally disabled. Is that the standard? It is a high possibility that under a case that involves those facts, and that would be true, Your Honor. Is that the standard, though, is the question. Is that the standard? Because that's what the opening brief said. I didn't take your brief to disagree with it. You're more arguing that standard was met here. But I want to just know, is that the standard? Do you agree that's the standard? It could be given the particular case. The general standard is whether or not the claimant can establish a prima facie case of disability and the type of disability matters and the particular claimant and what he's complaining of and his work capacities also matters. Every Longshore case is different, and every Longshore case has a different evidentiary record. In this case, which is confirmed by pages 105 and 188 of the record, the only relief that claimant was seeking was temporary total disability, which means that he was… I just want to make sure I understand, you know, we're saying the ALJ misapplied the legal standard. Okay, well, what was the legal standard he was supposed to apply? I want to make sure you agree that that standard is that someone is totally disabled if, although technically capable of working, they're working through extraordinary effort and excruciating pain. I believe the confusion that the courts could be facing right now, respectfully, Your Honor, is intertwining fact-specific circumstances with an overarching legal standard. Respondents' best understanding of what the legal standard is in any Longshore case is a prima facie case of disability, that type of disability, the nature and extent of it could differ depending on the case, but it comes down to an inability to work. Under the factual circumstances, if a claimant establishes a record where he experiences excruciating pain to the point where it inhibits him or her from returning to work, then a total disability finding by the fact finder would be sound. I would distinguish this case because the evidentiary record was put before ALJ Larson. There was not only evidence favoring claimant, which was primarily his testimony and Dr. Reynolds' testimony, but also an entire defense record where three doctors found him not disabled at all and had more information to base those opinions upon than what his treating physician did. And if I may, I would like to briefly address the cases cited by Petitioner in his briefs. First, he cites a case called SSA Terminals v. Carrion and argues that the sole basis for that disability claim was pain. The court should note, however, that those were not the facts in Carrion. The Carrion matter, which my office handled, involved a claimant who had two confirmed tears in his knees and multiple doctors' opinions confirming that those tears were work-related and disabling. The main issues in Carrion, which were irrelevant to the incident case, were the running of the statute of limitations and whether or not a surgery turned a permanent disability into a temporary one. Carrion is demonstrative of the fact-intensive nature of each and every longshore claim that is brought to the Department of Labor. In that particular case, though, the disability was based on far more than just pain. There was multiple doctors' opinions, radiology evidence, and more than just pain alone. And to illustrate that point, if respondents understand Petitioner's position correct, he seems to be arguing for a burden of production on the disability inquiry, when in reality, he's tasked with demonstrating a prima facie case of disability. It's not enough for him to simply produce some evidence suggesting that the claimant is disabled to some degree and then let the judge figure out whether or not that disability is partial or total or temporary or permanent. It is up to the longshore claimant in any given case to prove up the relief that is sought. In this case, that happened to be temporary total disability. Moreover, Gross is also illustrative of why the nature and extent of disability matters. Unlike this case, the Gross case involved a claim for partial disability, not total disability. In that case, the inquiry was whether or not the Petitioner or the claimant's wage earning capacity was diminished post-injury compared to pre-injury. That was not the inquiry in this case. The inquiry in this case was simply whether or not Mr. Jordan was totally disabled between April 24th, 2016 through March 27th of 2018. He had the opportunity to put forth the entire evidentiary record that he did, and Judge Larson, within his discretion, weighed the evidence and determined that he did not meet that burden of demonstrating a prima facie case of total disability. The Gross case is also distinguishable since the partial disability inquiry in that case was simply not brought up at all in this matter. Claimant or Petitioner stipulated in open court, as demonstrated on page 188 of the record, that the only issue for ALJ Larson to decide was whether or not he was entitled to temporary total disability benefits. Page 105 of the record was Petitioner's post-trial brief to ALJ Larson, and again he reiterates that the only relief sought is temporary total disability. In a temporary total disability case, the Petitioner was tasked with demonstrating total disability for a finite time period. He had the opportunity to present evidence of excruciating pain or his physical condition and how he felt about it. He testified in open court and he was deposed in this case. Nevertheless, there was other evidence, including three doctor's opinions that opined that he was not disabled at all, and that particularly surveillance footage contradicted his credibility. On that note, the surveillance footage that was cited to by ALJ Larson and relied upon by the three defense doctors was probative in this case. On page 14 of the record, Judge Larson indicated that it was probative mainly because of the sheer volume as well as the effect that it had on the three defense doctors' opinions. What do you make of this statement in the ALJ opinion? If Mr. Jordan quote-unquote can work, the act presumes he will and denies him benefits. Is that a correct statement of the law? Respondents contend that it is, Your Honor. That ability to work based on the totality of the evidence determines that he was not totally disabled, which is precisely why he did not meet his burden in this case. I see that my time is running low, Your Honor, so in conclusion, this is a case where the burden of proof was not met at a long-short trial, and a remand for a second try at relitigating these factually intense inquiries would be inappropriate. Thank you for your time. Thank you, counsel. We'll give you a minute for a rebuttal. Thank you, Your Honor. I'll let you go over it because I want to ask you right off. I'll let you get to your points. I wanted to refer you to ER-20 because I was trying to figure out what conclusion the ALJ actually made, separate and apart from whether it applied to the correct legal standard. And here he says, the burden is on Mr. Jordan to show the nature and extent of his disability during the dispute period. His own testimony is ambiguous at best, and his treating doctor's opinions rest on a less complete record than the opinions of Dr. Cheng and Dr. Schomer, if not Dr. Hsu as well. For all these reasons, the court concludes Mr. Jordan has not shown he was temporarily, totally disabled from April 14, 2016 until March 27, 2018. Tell me why that's not enough to suggest that he considered everything and made a factual finding that we need to review. Sure, Your Honor. And actually, this does get into one issue I did want to address with my time. The nature and extent of disability here refers to the total disability claim, which is a term of art that Alan was discussing. The disability analysis under the Act is a burden-shifting scheme. And temporary and permanent has to do with whether you're medically stable, and that's separate and apart from what's at issue here. But the total versus partial disability operates through a burden-shifting scheme where my side has to show that Mr. Jordan was disabled and couldn't complete his regular work. And then if he does that, the respondent side has to show or has the opportunity to show that there's some work that Mr. Jordan can do, essentially as a damage mitigation mechanism. Now, to get more directly to your point, if we return to the judge's discussion of Mr. Jordan's testimony on ER 18, he says here that Mr. Jordan's testimony is consistent with the view that cannot does not literally mean cannot. And he says that this testimony is unhelpful to the resolution of the case. The reason – In my mind, that goes more to the legal standard, whether he has the correct legal standard. Right. But I'm wondering – so I mean I guess what I'm wondering is even if there were error on the legal standard, it seems there is. You know, that conclusion or – I don't think so, Your Honor, because – Your Honor, you cut out there. I couldn't hear your full question. Oh, my – Repeating. No, I just was wondering whether we could make a determination that whatever legal standard applies, if this factual finding of ER 20 is enough, that satisfies the legal standard that we would apply. That's my question. Well, I don't think you can because the problem here is if he's saying that Mr. Jordan's testimony on the question at issue is ambiguous, and he also says here on ER 18 that Mr. Jordan's testimony is consistent with the view that cannot does not literally mean cannot, he's misapprehending the meaning of that testimony within the proper legal standard. And I think it's very clear via the discussion of the movie and the terms can and cannot in this opinion. I think everyone on this – at least I hope everybody on this – in this argument agrees that determinations of pain, you know, the potential for further injury, the potential of hazard on the job, I think we all agree that those are relevant to the standard for disability under the Act. But the problem is that if this ALJ is applying standard of possible versus impossible, those issues and the testimony on those issues wouldn't have moved the needle at all. And that's why the finding here that Mr. Jordan didn't satisfy his burden is inappropriate. And it's also the reason why the statement on ER 20 that his testimony was ambiguous just isn't enough to get you over the hump under the proper legal standard. Okay. Okay, counsel. Thank you. Thank you for your argument, both of you. And we – that concludes our – we'll submit the case now. And that concludes the oral argument. Judge Nelson, if I can, I know you had the chance to sit with Judge Block yesterday, but I did want to say since this is my day sitting with him, I wanted to express my appreciation to him for his service and for being willing to sit with us today. Great comment. We are – we're very grateful for all of our visiting judges who help us get through these cases and grateful for counsel who assists in it as well. And we will go ahead and stand and recess then. Thank you, your honors. Thank you, your honors. Thank you. This court for this session stands adjourned.
judges: R.nelson, Bress, Block